May it please the court, your honors. My name is Gary Amendola. I'm here on behalf of John Ferguson, counsel. Your honor, I'm going to take much less than 20 minutes. I think both of us think this is a pretty straightforward question of law for you to make a decision about. What I would like to do, since I did not file a reply brief, is to address a couple of things that were brought up in the appellee's brief, and perhaps they will answer questions that I think you may have. First of all, why didn't in this contract of insurance, why didn't the insurance company just flat out say, if we hurt somebody in Idaho, the limit of liability is going to be $500,000. If we hurt somebody somewhere else, it's going to be $2 million. Who are the insureds under this policy? Well, the insureds actually is the school district. And is it only the school district? School district 71 in Coeur d'Alene, Idaho, yes. So it's only the school district? Yes. And the school district is protected under Idaho law with this $500,000 if the school district wishes to take advantage of it? Yes, it could. Okay, but what I'm worried about is, with your hypothetical, that it might have been some other defendant. But the only defendant is the school district, which has the statutory protection if it wishes to take advantage of it. Okay, I got it. That is true. So there's no difficulty about two or three different insureds, some of whom may or may not be protected. Okay, I got it. Not in this case. Okay. So why didn't they do that? Well, we won't find the answer in the record, but certainly ‑‑ Pardon me, counsel. Why are we concerned with why something was not done? Aren't we concerned with what the policy said and how we should interpret the policy? Well, Your Honor, I think it's important about why they didn't do something because what they did ‑‑ Let's get to what they did. Okay. And what you say that meant. Let me tell you what they attempted to do, Judge. What they attempted to do was limit their liability. If you want to talk about this case, you want to talk about another case. Well, no, because it's opposition that they attempted to do something and failed at it. And what they attempted to do was limit their liability for hurting people, citizens of the State of Idaho to $500,000. And they attempted to do that by putting in this tort claim limitation under Idaho law. The reason I say they attempted to do that, because in our opinion they failed, because they didn't do it ‑‑ Yes, I agree. They issued the policy for $2 million. I agree. So you're saying what it is, they issued the policy for $2 million, but said, by the way, if the lawsuit arises in Idaho, I guess, or if it arises because of the insured, you're only going to have $500,000 worth of coverage. Under Idaho law, they could have done that, but they didn't. It's a ridiculous thing to do. Here's a $2 million policy, but if a loss arises, we're only going to pay $500,000. Well, if it's the same injury in Idaho, it's $500,000 the limit. If the same exact injury happens in Washington or Montana, there's $2 million in coverage. Yeah, but they have only one defendant. It's the Idaho school district. Right. Does this Idaho school district go around injuring people in Montana and Washington State? Do they do that very much? It's possible they could. Their school bus could run somebody over in Montana. And so the answer is it could happen. Do we have evidence about what percentage of the claims come from Idaho as opposed to other states? We don't have that in the record. I think common sense tells us the answer, however. So back, no offense, Judge, but back to what they attempted to do. You did answer his question. What they did do was nothing. What they did do was write a policy for $2 million. That's what we think. I'm going to put on my insurance counsel's hat for a second. How do you handle their argument that the Idaho tort claim respondent or endorsement says the limit of liability per the amount indicated by Idaho 6924 as applicable to each occurrence is? What is the amount of coverage? The answer to that, Judge, is that in Idaho Code 9-924, there is no limit of liability. There is simply a minimum amount of coverage that is required. That's not what the district court found. The district court found that plain language of the contract evidence is that the general liability limits for claims arising from conduct in Idaho were intended to reflect the amount indicated in Idaho Code 6924, which is $500,000, the only amount mentioned. Why is the district court wrong on that? Well, you cannot read it simply as $500,000 because it's not stating a limit, Your Honor. That's the whole point. It is stating a minimum. The judge misread the language, A, as plain and unambiguous, and B, as to effect. Yes. No offense to Judge Lodge, but yes. Let me ask you this. It may or may not be on the record. If your client had sought a policy that did not have an upper limit of $2 million on the face of the policy, but had sought a policy that had an upper limit of $500,000 on the policy, would it have paid a different price? Judge, you're asking if the school district... Had sought a policy, the face amount of the policy was $500,000. Of course, the face amount of this policy is $2 million, subject to some possible reduction based on the existence of this clause. Yes. Is there anything on the record that tells us what the insurance company would have charged for a policy that said, as its face amount, $500,000? There's nothing in the record that would answer that question, although I believe common sense and business practice would. Unless this is a tricky way of sort of saying, well, it looks like $2 million, and you can think you're getting a good deal, but the truth is, once you've parsed it, it's only $500,000. And the truth is, if you wanted a policy for $500,000, we'd sell it to you for the same amount. Once you figure out the trick, of course we'll charge you only the same amount. Maybe. But your short answer is that there's nothing in the record. We don't know. There isn't, although the fact that they have $2 million implicates other claims other than those that might be tort claims in Idaho. When we talk about this limitation, it only really affects tortious conduct. So contract claims within the state with respect to this defendant go up to the $2 million? Yes. It's pretty much to have a lawyer say yes every time. Thank you, Your Honor. No reasonable answers. Instead of, I'll get to that, Your Honor. Your Honor, one of the arguments that was also made is that if they simply put the $500,000 number in very clearly into the insurance policy, since it's the legislature who decides what that minimum needs to be and from time to time it may change, their argument is they would simply have to rewrite those contracts. I think that's a nonsensical argument because just like this policy, these policies are issued on a yearly basis, and certainly situations change all the time, and it wouldn't make any big deal to change it next year if the legislature changed their number. Your client is not the school district. Your client is a person who's injured, and you've taken an assignment and a covenant not to execute in exchange for the benefits of the policy. Is that correct? My client is a father of a child who was injured during school at one of the schools in the school district. And you've taken an assignment of the policy benefits in exchange for a covenant not to execute against the school district? No, actually we're in right now a personal injury lawsuit that is being pursued in state court. It's on hold pending a determination of whether the coverage is $2 million or $500,000. My understanding is actually if the coverage is only $500,000, the school district liability is limited to $500,000. Yes. That is to say, so there's nothing to assign. If the insurance coverage is only for $500,000, there is no excess liability on the part of the actual tortfeasor, correct? That's correct. Yes. So your client is the real party in interest here, start to finish, is to say anything over $500,000 either comes out of the insurance company or comes out of nobody. That's correct. So, Your Honor, what I think they attempted to do, they failed at doing. And because I do think that was what their intention was, why did they go through this convoluted process? Well, again, it's not in the record, but some bureaucrat or some politician at some point in time decided that we're going to limit our exposure when it comes to the citizens of Idaho. And if I was the person, that bureaucrat or politician, I don't think I'd want that public policy to be announced in bold and clearly in writing. I think I'd tuck it away somewhere in an insurance policy where it wasn't particularly clear. It's bad public policy, and that's why I think they attempted to limit their liability in that way rather than simply say $500,000. But the public policy is clear enough. That's in the statute. It's very clear that a school district, if it wishes, can limit its liability to $500,000. All it needs to do is obtain insurance limited to $500,000. That's very clear. That is true. It's not whether the statute is clear or what the public policy is. The issue is what the insurance policy did. And your argument may be that the insurance company doesn't want to announce loud and clear what it's doing, but it's not a question of public policy. It's a question of what the policy did. Fair enough. Not public policy. Rather, insurance policy did. Yeah, yeah. Judge, I would – one other point, and then I would be happy to entertain any other questions. Other than that, I will be finished. There's also this interplay with Idaho Code 9-926, which isn't mentioned in the insurance policy, but certainly is a law that relates to this whole issue. And in case we're wondering if the legislature of Idaho isn't capable of actually establishing a limit, look at that section. It establishes very clearly a limit of – a minimum – a limit of liability of $500,000 in the absence of something greater. Had this insurance policy referred to 926, I don't think we'd be here today. So they could have done it right. They didn't. It's ambiguous, and you should find some. Okay. Thank you. Why don't we hear from the other side, and then you do have some time. Thank you. May it please the Court, my name is Brian Julian. I represent Coregis Insurance Company, and I'm cognizant this is your last argument of the morning, and I'm also aware that these are pretty direct issues. So I'll attempt to be brief and actually just address some of the issues you brought up. I understand that the Court is saying that our first blush, this looks like someone bought a pig in a poke, basically. That's not what this case is about. This isn't a case where the insured school district is complaining they got the wrong coverage. This isn't a case about the insured school district saying we were misled. This isn't a case saying we've been defrauded and got $2 million. This is an interested injured party who wants to know, do I have $500,000 to go after, or do I have $2 million? Do we have any statement in this case from the school district as to what it thought it was getting? It was never an issue. It was never an issue. We never really got into discovery because there was no ambiguity in the policy. So your short answer is we have not heard from the school district as to what it thought it was buying. Well, I represent the school district in the underlying personal injury case, so I am their attorney. And there's an affidavit. I've got a clean question, and that is to say, is there something in this record that is now in front of us that tells us what the school district thought it was getting with respect to the issue now in front of us? No, Your Honor. Okay. And there's a reason for that, and that is there is no ambiguity in the policy. So we didn't have to get to the party's intent or what the party's expectations were. The court said, does this policy clearly limit it to $500,000? Does the school district have a dog in this fight, the fight in front of us? No. Yeah. No, not really. And here's the point. There's many governmental entities in the state of Idaho that will self-insure. Why even buy insurance? Save your premium. Because the most you're going to lose under Idaho law is going to be $500,000. Unless you have a higher limit. Yes, unless you have a higher limit. But its own money is at risk, $500,000, under state law claims. Now, why would they have the $2 million limit? Well, I've been doing this 29 years for school districts, I can tell you. First of all, Idaho is bordered by Wyoming and Utah on the 10th Circuit, and Nevada, Oregon, Washington, and Montana. There are some school district routes where they go to activities, they go right through the state of Washington, get sued in Spokane, going to activities. Well, Idaho law is not going to control at all if we hit a Washington resident. But more importantly, personal injury is a small, small facet of what schools get sued for. They get sued under the Individuals with Disabilities Act. They get sued under the Americans with Disabilities Act. They get sued for employment actions, right and left, from Title VII. They get sued under Title IX now. There's a direct cause of action for that. Those are all federal law. And there's plenty of coverage now because there's absolutely no limit.  There may be certain limits under 1983 and 1981 now, depending on if it's a mixed motive case or whatever. But you know what I'm saying is that there are so many different issues that this wasn't in any way an illusory policy. Mr. Amendola's argument is, well, why didn't you just say 500,000? Well, what they did was adopt by reference. They said, our limit of liability is going to be under 6-924. Why wouldn't you just put the 500,000 down? I didn't say our limit of liability is going to be the amount stated in 6-924. They said our limit of liability is going to be the limits of liability stated in 6-924. And I take it the appellant is saying there are no limits of liability stated in 6-924. It's as simple as that. Now, what language in 6-924 do you find create a limit of liability? Because to a limit of not less than $500,000 doesn't seem to me to create a limit of liability, except on the downside. Okay. Let's actually read the language of the policy. This is what it says. The limit of liability per the amount indicated by Idaho Code 6-924. There is no other amount indicated than $500,000. It's simply adopting a figure by reference. That is in the excerpts of record. That's the exact language used. What page are you? It's in the excerpts of record. I believe it is marked as page 10. That is the Idaho tort claim endorsement. The very first sentence says we're simply taking the figure in there as indicated. But you've got to read it in context. It's the limit of liability per the amount indicated, not just the amount. It's the limit of liability per the amount indicated. The question is, is there a limit of liability amount indicated in section 6-924? The answer is pretty simple, isn't it? There isn't. It's the maximum amount. Where in that 6-924 is there any language which says that $500,000 is the maximum amount? It says to a limit of not less than. With all due respect, Your Honor, it is saying, and it's adopting. Whenever I hear that, it's like, Judge, you're wrong. No disrespect intended, but what it is saying is the limit of liability per the amount indicated in 6-924. There is no other amount. It's not saying that we are adopting this as a maximum. It's saying this is the amount. Why do they choose that figure? Why is it a moving target? If you want to break up the sentence, it would be much better if after A it said per the amount indicated. Right. But it doesn't say that. It says limit of liability per the amount indicated. That would seem to indicate to me that if there is a limit of liability, that's the amount. But if there's no limit of liability, then it isn't the amount. Well, I would agree with you, Your Honor, if there was more than one figure. But it is simply saying our amount under state law is going to be this figure. It doesn't even say. It's obvious to the district judge that the only purpose of this was to reduce your limits down to $500,000. I understand the purpose. The question is what it says. Let me finish the sentence after the semicolon. Sure. Limit of liability per the amount indicated is the limit of the company's liability, semicolon, unless 924 is ruled invalid, thereby reverting the limit of liability as stated in the declarations. Now, that's a weird thing to say when the only thing 924 is, it's not a limit of liability to the school district, but rather its function as a statute is to require that the school district be liable up to that amount. So why in the world would that ever be invalidated? I can't imagine an argument that would invalidate it. Well, because there's been at least three lawsuits in the state of Idaho attempting to allege, as an irrational act, this arbitrary $500,000 before it was $300,000. If this is ruled unconstitutional, then the limits will go up. But otherwise – No, no, no. But I think that unconstitutional argument goes to 926, not to 924. No, it's under 6-924. The case before is Jones v. Board of Medicine when the former statute was 300,000. Before that, it was attacked when it was 100,000. But the attack was saying that the school district shouldn't be required to have any coverage at all? No, absolutely. They don't need to buy any coverage. You can do a tax levy if you want or a judgment levy. The insurance comes under 6-926. It says if you happen to buy more applicable and collectible insurance – those are important words – then you can have more than 500,000. But if you don't buy any insurance whatsoever, your liability is going to be half a million dollars. Why did they say if that was declared invalid? Well, it's to elevate it. It's the same thing as if there is a jurisdiction in Washington that has higher limits of governmental liability. But that's assuming that 6-924 provides limits of liability. It doesn't. It provides a minimum of liability. And what it does is it provides the number that creates the limits of liability, whatever the number is in there. And why did they choose this and not just say 500,000? Well, that's because every school in Idaho operates in a fiscal year. It starts July 1st. That's also when all the new legislation comes in. It's impossible to actually know if the legislature has increased it or decreased it. It's simply going to follow that figure. There's nothing wrong with following that figure. As Your Honor had mentioned, this isn't a case against public policy. The Idaho legislature declared what the public policy is going to be, is that if you have a personal injury claim, basically, under Idaho law, you're limited to $500,000. There's absolutely nothing wrong with an insurance company managing risk and saying we're going to put you. You're limited to $500,000 unless the school jurisdiction has chosen to insure for more than that amount. Yeah, and they have absolutely no incentive whatsoever to insure more than that. Well, you know, I'm not sure that's right. They may have no narrowly conceived economic interest to insure for more than that, but many entities and many individuals insure for very large amounts of money because they wish the victims of their own negligence or whatever it is to be fully compensated to the extent of the injury. So I don't want to say they have no incentive. I agree there may be some incentive to that. They also have to be a steward of the public money and not spend money foolishly. We do have welfare programs and things like that. The state of Idaho provides for that. What they have is an obligation to provide the best education with limited tax dollars. If we have a law that says under Idaho law you're never going to pay more than $100,000, as an individual, why would you go pay more than that unless you have some type of humanitarian urge? But from an economic standpoint- Well, isn't that normal with school districts? The people who are going to be hurt by school districts include their students, right? They want to make sure the students are hurt, they're well taken care of. Well, they also want to make sure they basically use their money efficiently. Clearly, they're getting a better deal because their liability is going to be limited to $500,000 versus $2 million. But this is the same policy. 98% of the school districts-this is negotiated with all the school districts. Every school district, 98% of them, have this policy. And why do they do that? Well, it's because most cases are less than $500,000. By the way, this is the first time this has ever been attacked in an appellate court. So the vast majority of claims are under $500,000. Or there are federal claims where we now have the $2 million. I think it comes down to this, really, plain and simply. Is there a legal ambiguity? Do we need to go find what the party's intent was? And I think- Why do you say that the federal claims aren't similarly limited? Because they are not-the intent, clearly, is- No, not the intent. I'm talking about the Idaho Tort Claim Act endorsement. If there's a federal claim for a Title VII Act for damages, action for damages, why doesn't your interpretation apply to the federal claim? Because the Idaho Tort Claims Act does not apply to federal claims. And the Ninth Circuit has held, in a number of cases, that state limitations have nothing to do with federal law. It's called preemption. Obviously, federal law preempts state law limitations. But all it says is the Idaho Tort Claim Act endorsement. But the language of this endorsement doesn't say that the limitation is only as to Idaho State Tort Claim Act. Well, if we go to page four- Unless you include the title. Page four says, this policy is specifically designed to incorporate the protections and claim limitations granted school districts in the Idaho Tort Claims Act. Okay, now we've got- It's not really a hidden endorsement on the very first page where the limits are. There's a reference to the Tort Claims Act. The Tort Claims Act does not apply to federal law. Federal law preempts any type of effort by the state. I agree with you. Okay. In a nutshell, I know it's approaching time, and I'm not going to beat a dead horse. The issue's plain and simple. It is, can this court say that there is another reasonable interpretation? This is not a case about public policy being violated. It's not a case about someone being misled. It is a case about, did they intend to limit it to 500,000? No, the question is not whether they intended. The question is whether the language unambiguously- And I misspoke, Your Honor, because you're 100% right. It is a matter of looking simply at the language and what does it mean. That's the legal question we look at de novo. Absolutely. My answer would be part of the way, the same answer that the other side gave, which is to say if your reference had been to 926, this is an easy case and you win. This becomes a hard case because your reference, because 926 is clearly a limitation on liability, and it gives you the number. 924 talks about what happens when you buy insurance. No, just the opposite. 926 is what happens when you buy insurance. Your reference to 6-924, Your Honor, is the one that specifically says you're limited to 500,000. No. No, I'll read you 926. I'll read it. Do I have it wrong? If I do, I apologize. Read 926. It starts, it says, Combined aggregate liability of the governmental entities and employees for damages, blah, blah, blah, blah, blah, shall not exceed and is limited to $500,000. And then it says, Unless voluntarily, or it means unless the government entity purchases more. But the limitation is right here. It's limited to $500,000. They can go over it if they like. So if your reference had been to 926, you win. Because your reference is 924. I mixed them up. I apologize. That's why this is a hard case. Well, it's a hard case, I guess, if we attempt to really stretch this and say, Was there anything meant other than attempting to reduce this? Even on its face, it goes to one figure, and that's the $500,000 figure. Your problem is that when you write the contracts, you buy the language. I agree. And, you know, clear and unambiguous insurance language is kind of an oxymoron. I'll tell you that. Thank you. Your Honors, if I can answer questions, I'd like to do that. Otherwise, I think I've presented the materials that I need to. Okay. Thank you very much. Drive safely on your way back home. Thank you. It's a good argument that lawyers from Montana are pretty good guys. I mean, they come in.  They treat each other nicely. They give us a lot of credit. They give us a degree of respect we don't often find. You can come back and do anything you want. And even Idaho. It's just we're from Idaho. Even Idaho lawyers are okay. We even have a higher standard. That's right. Thank you very much. Thank you. Okay. That concludes our argument calendar for this morning. We are now adjourned until tomorrow morning. Thank you very much.
judges: Thompson, Fletcher, Bea